liWILLIAMS, Judge.
Premier Bank, National Association (now Bank One of Louisiana) appeals a trial court judgment homologating the twelfth tableau of distribution and authorizing the testamentary executor, Robert Curry III, to compromise and settle all of the claims that a creditor, George Gear, has against the estate of W. John Sherrouse, Jr. For the following reasons, we affirm.
FACTS
In February 1991, W. John Sherrouse, Jr., a resident of Ouachita Parish, died in Monroe, Louisiana, leaving a will and codicil which were submitted for probate. Robert Curry was confirmed as executor of the estate. Initially, debts of the succession were paid on court order without filing a tableau of distribution. In August 1991, Premier Bank N.A. (“Premier”) filed a petition for notice of distribution and a proof of claim for the amount of $1,000,000. This claim was reduced when Premier seized from the Sher-rouse estate a $500,000 certificate of deposit which secured a promissory note.
Subsequently, the executor filed a descriptive list and first tableau of distribution, noting that the succession may have insufficient funds to fully pay all debts and claims owed by the decedent. In February 1992, George Gear (“Gear”) filed a proof of claim against the estate in the amount of $802,707.95 and later added another claim of $208,668. The decedent’s former wife, Jane McKenzie Sher-rouse, also filed a claim for $219,250, representing the present value of decedent’s promise to pay her support and maintenance in *881 the amount of $2,000 per month during her lifetime. During the administration of the Sherrouse succession, the executor has continued to pay expenses, including attorney and accounting fees and taxes. At present, Premier, Gear and Jane Sherrouse are the only remaining succession creditors.
Gear’s claims against the succession are based on his payment of ^obligations incurred by a partnership, Capitol Lake Apartments (“Capitol Lake”). The partners were Gear, the decedent, Sam Short and William LeBlane. Capitol Lake defaulted on a $2,500,000 mortgage note held by Pelican Homestead. The note was individually endorsed by each of the partners. Gear paid $1,494,325.99 in satisfaction of the debt to Pelican Homestead, which assigned the note to Gear. He also paid $188,668 to First American Bank, which held thre'e notes executed by Capitol Lake and personally endorsed by the decedent. Gear filed claims against the Sherrouse estate to recover one-half of the amount he paid to Pelican Homestead and the entire amount paid to First American Bank. Gear entered into negotiations with the executor and agreed to accept the sum of $300,000 in full settlement of all claims against the Sherrouse succession.
In November 1994, the executor filed the twelfth tableau of distribution and a petition seeking authority to settle Gear’s claim for $300,000 in cash, together with the delivery of several promissory notes. The executor also sought court authority to pay $48,000 to Jane Sherrouse to satisfy her right to alimony through October 1994. Premier filed an opposition to the twelfth tableau of distribution provisions seeking to settle Gear’s claims and partially satisfy the claim of Jane Sher-rouse. Premier argued that these claims were not privileged and were not entitled to be paid in preference to any other remaining claims.
In February 1995, a hearing was held on Premier’s opposition. The trial court approved the $48,000 payment to Jane Sher-rouse, but took under advisement the proposed settlement with Gear. Before the trial court had taken further action, the executor filed a petition seeking to amend the twelfth tableau of distribution to remove three of the original promissory notes, which had been paid and were no longer available. After another hearing, the trial court approved the proposed settlement with Gear and rendered judgment homologating the amended tableau of distribution. Premier appeals.
J3DISCUSSION
Premier contends the trial court erred in calculating the value of estate assets available to creditors. It argues the Sher-rouse property located in Florida should not have been considered by the trial court in determining the reasonableness of the proposed settlement with Gear.
When a person dies leaving property in two or more states, his property in each state is considered a separate succession for the purpose of its administration. Jarel v. Moon’s Succession, 190 So. 867 (La.App.2d Cir.1939). Here, the trial court found that the Sherrouse estate held assets of $945,000, an amount which included the value of the Florida property. Premier maintains that the trial court should not have considered the Florida assets because they are not part of the Louisiana succession. However, in Jarel v. Moon’s Succession, supra., this court considered the value of proceeds received from a foreign succession in denying an heir’s claim to Louisiana property.
Although the Louisiana executor does not have authority to administer the property located in Florida, the availability of those assets is a valid factor for the trial court to consider in determining the reasonableness of the proposed settlement. Therefore, we cannot say the trial court abused its discretion in considering the availability of the Florida assets. The assigned error lacks merit.

Capitol Lake Apartments Note

Premier argues that the payments received by Gear from the makers of the promissory note, Capitol Lake, Sherrouse Realty Inc., and W.J. & C. Sherrouse Inc., must be applied to reduce the principal amount, and not attributed to the accrued interest. Premier contends that under the rules of surety-ship, the Sherrouse succession is entitled to a credit for the entire amount paid by the *882 primary obligor to Gear, thereby reducing his claim.
Suretyship is an accessory contract by which a person binds himself to a | creditor to fulfill the obligation of another upon the debtor’s failure to do so. LSA-C.C. Art. 3035. A surety who pays the principal obligation is subrogated by operation of law to the rights of the creditor. LSA-C.C. Art. 3048.
In the present case, Gear satisfied the principal obligation, received payments from the primary co-debtors and imputed a portion of the proceeds to interest. Premier asserts that Gear is trying to improperly collect contractual interest from the co-surety, the Sherrouse succession. To support its claim, Premier cites Aiavolasiti v. Versailles Gardens Land Development Co., 371 So.2d 755 (La.1979), which involved a surety who sought to recover from the remaining co-sureties their share of the satisfied debt, plus interest as provided by the promissory note. The supreme court held that Aiavolasiti was not entitled to a judgment with note interest against the co-sureties because his recourse against them was based on law, under the suretyship rules, and not on contract.
However, that case can be distinguished from the present situation in that Gear is not seeking to recover mortgage note interest from the Sherrouse succession as co-surety, but from the primary co-debtors. LSA-C.C. Art. 3052 provides that a surety may recover from the principal obligor by subrogation such interest as is owed with respect to the principal obligation. Thus, Gear was entitled to impute a portion of the payments from the co-makers to interest. LSA-C.C. Art. 1866. A surety who pays the creditor may recover from his co-sureties the proportionate share of the obligation each is to bear. LSA-C.C. Arts. 3055, 3056. As co-surety, the Sher-rouse succession is liable for one-half of the amount paid to satisfy the original debt. Premier has not presented any authority to show that this obligation should be reduced by the amount of interest Gear received from the primary co-debtors.

First American Bank Notes

Premier also questions Gear’s claim that he is entitled to recover from the |5succession the full amount of three notes held by First American Bank, in the amount of $188,668. Premier contends that Gear signed the guaranty agreement as an accommodation party and may recover only one-half of his claim, an amount of $94,334. Gear argues that the Sherrouse succession is liable to him for the full amount of the notes because the decedent personally endorsed the notes and Gear relied on this endorsement in executing a continuing guaranty.
LSA-C.C. Art. 3055 provides that co-sureties are presumed to share the burden of the principal obligation in proportion to their number unless the parties agreed otherwise or contemplated that he who bound himself first would bear the entire burden. The evidence shows that the decedent signed each of the notes as the representative of the maker, Capitol Lake, and with his personal endorsement. Gear did not sign the guaranty agreements until a later time. These facts indicate that Gear relied on the prior endorsement of the decedent and the trial court could have found that the evidence was sufficient to rebut the Art. 3055 presumption.
Premier urges that the succession executor’s settlement would result in Gear receiving a greater percentage of his claim to the detriment of the remaining creditors of the estate. However, we note that these other creditors have received partial payment of their claims. Jane Sherrouse was previously paid $88,000 from estate assets. In addition, Premier has already received $500,000 of estate assets through its seizure of a certificate of deposit. This distribution reflects a payment of almost 50% of Premier’s claim.
The trial court heard witness testimony, considered the arguments of parties’ counsel and reviewed the succession’s financial records. Under the circumstances, the trial court could reasonably find that the executor’s proposed distribution to Gear would leave sufficient funds in the estate to provide for the equitable treatment of all creditors. Therefore, we cannot say the trial court abused its discretion in approving the distribution of assets to Gear. This ^assignment of eiTor lacks merit.
*883 CONCLUSION
For the foregoing reasons, the trial court’s judgment is affirmed. Costs of this appeal are assessed to the appellant, Premier Bank, National Association.
AFFIRMED.